<u>Case No. 24-1192</u>

UNITED STATES COURT OF APPEALS
<u>FOR THE SIXTH CIRCUIT</u>

PAUL COOK,

Plaintiff-Appellant

v

WARREN SCREW PRODUCTS, INC.,

Defendant-Appellee

Appeal from the United States District Court
Eastern District of Michigan
<u>Case No. 2:22-cv-11494</u>

**DEFENDANT-APPELLEE'S BRIEF ON APPEAL**

**CERTIFICATE OF COMPLIANCE/CERTIFICATE OF SERVICE**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

JEFFREY C. GERISH
*Plunkett Cooney*
Attorney for Defendant-Appellee
38505 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 901-4031
jgerish@plunkettcooney.com

## CORPORATE DISCLOSURE

Pursuant to Sixth Circuit Rule 26.1, Defendant-Appellee Warren Screw

Products, Inc. makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned

corporation?  No.

2.    Is there a publicly owned corporation, not a party to the appeal,

that has a financial interest in the outcome?  No.


DATED:    September 4, 2024        /s/Jeffrey C. Gerish
                                   Jeffrey C. Gerish

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE ................................................................. 1

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT ................................. v

COUNTER-STATEMENT OF QUESTIONS PRESENTED ................... 1

COUNTER-STATEMENT OF THE CASE ............................................ 2

    A.  Introduction .............................................................................. 2

COUNTER-STATEMENT OF FACTS ................................................. 4

    A.  Substantive material facts ...................................................... 4

        1.  Plaintiff's Pre-Employment Process with Defendant .......... 4

        2.  Plaintiff works just one week, half of which while experiencing stomach issues. ............................................ 5

        3.  Plaintiff stops coming to work for the next two weeks. ...... 8

        4.  Defendant tries to communicate with Plaintiff about the performance of his essential job functions. ........................ 11

        5.  The Decision to Terminate Plaintiff's Employment ......... 12

    B.  Pertinent proceedings ........................................................... 13

SUMMARY OF ARGUMENT ........................................................... 15

ARGUMENT I .................................................................................. 17

    PLAINTIFF FAILED TO DEMONSTRATE A PRIMA FACIE DISABILITY DISCRIMINATION CLAIM BECAUSE HE NEITHER HAD A DISABILITY NOR WAS A QUALIFIED INDIVIDUAL. ............................................. 17

    A.  Plaintiff failed to demonstrate he was disabled. ................. 18

    B.  Plaintiff was not a qualified individual. ............................... 24

ARGUMENT II ................................................................................. 29

    PLAINTIFF FAILED TO DEMONSTRATE THAT DEFENDANT'S REASON FOR TERMINATING HIM WAS PRETEXTUAL FOR DISABILITY DISCRIMINATION. ........................................................... 29

ARGUMENT III ..................................................................................................31

       PLAINTIFF FAILED TO ESTABLISH A FAILURE-TO-
       ACCOMMODATE CLAIM .....................................................................31

ARGUMENT IV ..................................................................................................34

       PLAINTIFF FAILED TO ESTABLISH RETALIATION............................34

RELIEF ...............................................................................................................35

CERTIFICATE OF COMPLIANCE........................................................................36

CERTIFICATE OF SERVICE ............................................................................... 1

ADDENDUM – DESIGNATION OF RELEVANT DISTRICT COURT
DOCUMENTS...................................................................................................... 1

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*AC ex rel JC v. Shelby County of Educ.*,
  711 F.3d 687 (6th Cir. 2013) ............................................................................ 17

*Babb v. Maryville Anesthesiologists PC*,
  942 F.3d 308 (6th Cir. 2019) ............................................................................ 17

*Browning v. Liberty Mut. Ins. Co.*,
  178 F.3d 1043 (8th Cir. 1999) .......................................................................... 27

*Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*,
  155 F.3d 775 (6th Cir. 1998) ............................................................................ 33

*DiCarlo v. Potter*,
  358 F.3d 408 (6th Cir. 2004) ............................................................................ 31

*EEOC v. Ford Motor Co.*,
  782 F.3d 753 (6th Cir. 2015) ...................................................................... 26, 29

*Hrdlicka v. General Motors, LLC*,
  63 F.4th 555 (6th Cir. 2023) ....................................................................... 20, 29

*Hurtt v. Int'l Servs., Inc.*,
  627 Fed.Appx. 414 (6th Cir. 2015) ................................................................... 34

*Johnson v. Cleveland City Sch. Dist.*,
  443 F. App'x. 974 (6th Cir. 2011) ..................................................................... 31

*Kieffer v. CPR Restoration & Cleaning Servs, LLC*,
  200 F. Supp. 3d 520 (ED Pa 2016), *aff'd sub nom. Kieffer v.
  CPR Restoration & Cleaning Servs, LLC*, 733 F. App'x 632
  (3rd Cir. 2018) ................................................................................................... 23

*Lewis v. Humboldt Acquisition Corp.*,
  681 F.3d 312 (6th Cir. 2012) ...................................................................... 18, 34

*McDonnell-Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .......................................................................................... 17

*Milholland v. Sumner County Board of Education*,
  569 F.3d 562 (6th Cir. 2009) ...................................................................... 20, 29

*Mosby-Meachem v. Memphis Light, Gas & Water Div.*,
  883 F.3d 595 (6th Cir. 2018) ............................................................................ 31

*Ríos–Jiménez v. Principi,*
    520 F.3d 31 (1st Cir. 2008) .............................................................................. 27

*Shields v. Credit One Bank, N.A.,*
    32 F.4th 1218 (9th Cir. 2022)................................................... 21, 22, 23, 29

*Tennial v. United Parcel Serv., Inc.,*
    840 F.3d 292 (6th Cir. 2016) ........................................................................ 18

*Texas Dept of Community Affairs v. Burdine,*
    450 U.S. 248 (1981)......................................................................................... 17

*White v. Interstate Distributor Co.,*
    438 Fed. Appx. 415 (6th Cir. 2011).............................................................. 19

*Whitfield v. Tennessee,*
    639 F.3d 253 (6th Cir. 2011) ........................................................................ 18

## **STATUTES**

42 U.S.C. § 12102(1) ............................................................................................ 19

42 U.S.C. § 12102(3) ............................................................................................ 19

42 U.S.C. § 12111(8) ...................................................................................... 25, 26

42 U.S.C. § 12112(a)............................................................................................ 18

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Warren Screw Products, Inc. ("Defendant") believes the issues are sufficiently straightforward that the Court can resolve the appeal on the briefing without oral argument.  Defendant nevertheless requests oral argument in order to preserve that right, and counsel would be happy to answer any questions the Court has regarding Defendant's position.

## <u>COUNTER-STATEMENT OF QUESTIONS PRESENTED</u>

### I.

Did Plaintiff fail to demonstrate a prima facie disability discrimination claim because he neither had a disability nor was a qualified individual?

### II.

Did Plaintiff fail to demonstrate that Defendant's reason for terminating him was pretextual for disability discrimination?

### III.

Did Plaintiff fail to establish a failure-to-accommodate claim?

### IV.

Did Plaintiff fail to establish retaliation?

## COUNTER-STATEMENT OF THE CASE

**A.    Introduction**

Plaintiff is a man who, by his own admission in his deposition, is not disabled and has never held himself out as being disabled.  Defendant hired Plaintiff as a delivery driver.  Plaintiff worked a total of six days before proceeding to stop working for two straight weeks on the grounds that he was having stomach issues that required him to use a bathroom frequently.  His two-week hiatus from work after working less than a week began immediately after he learned that he would have to work Saturdays—something he admitted would have been a deal-breaker in taking the position had he known that upfront.  After not working for those two weeks, Plaintiff rejected Defendant's proposal that he work a limited schedule, and he left the truck keys and fuel card at work, suggesting he had no interest in continuing his employment.  So Defendant terminated Plaintiff's employment.

Plaintiff later filed this lawsuit alleging *disability* discrimination on the basis that Plaintiff's transitory stomach issues constituted a disability under the American with Disabilities Act.  He alleges that Defendant terminated him based on that alleged disability, rather than on the basis that he stopped coming into work and suggested to Defendant that he was not interested in returning.  He also alleged that Defendant refused to make a reasonable

2

accommodation notwithstanding Defendant's explicit offer to allow Plaintiff to work a limited schedule, which he rejected. He also alleged a retaliation claim.

Defendant moved for and was properly granted summary judgment on all claims. A disability discrimination claim was properly dismissed because Plaintiff was not disabled and because he also did not constitute a qualified individual—because his stomach condition prevented him from performing the job. Any perceived disability claim fails on the grounds that the relevant statute explicitly states that a transitory condition such as the one Plaintiff experienced does not give rise to a perceived disability claim. The failure to accommodate claim plainly fails because Defendant did not fail to offer a reasonable accommodation. And the retaliation claim fails because there is no underlying basis to support a claim of retaliation.

The district court correctly granted summary judgment on some of the grounds on which it could have relied, while finding it unnecessary to address other potential grounds. For any of several reasons, this Court should affirm.

## COUNTER-STATEMENT OF FACTS

**A.    Substantive material facts**

### 1.    Plaintiff's Pre-Employment Process with Defendant

Defendant is a manufacturer of Close-Tolerance Turned, Broach, Machined and Assembled Metal Components.  The Company has been machining customer-designed components for all major manufacturing industries since 1957 in Warren, Michigan.  Plaintiff applied for a Delivery Driver position with Defendant and interviewed with Tom Shelton, Defendant's Materials Manager. (Plaintiff's Deposition, p. 40, R.E. 16-3, PageID.155).  During the interview, Mr. Shelton explained that the job responsibilities included delivering parts, loading and unloading trucks, and weighing parts. *Id.*  Plaintiff did not express any reservations about aspects of the job for health-related reasons. *Id.*

Mr. Shelton also informed Plaintiff that the workdays and hours were Monday through Friday, 7:00 a.m. to 5:00 p.m., with some Saturdays. (Plaintiff's dep, pp. 41-42, R.E. 16-3, PageID.156-157).  Plaintiff informed Shelton that he did not mind "working a Saturday now and then." (*Id.*, p. 41). Plaintiff had no objection to the days and hours that he would be working. (*Id.*, p. 42).  Plaintiff understood that attending work was an essential aspect of

performing his job as a delivery driver, and that it was not a position he could do remotely. (*Id.*, p. 43, R.E. 16-3, PageID.158).

Defendant offered Plaintiff the position and required him to undergo a pre-employment physical, which he passed without any restrictions or limitations. (Plaintiff's dep, pp. 40-41, R.E. 16-3, PageID.155-156). Plaintiff was an at-will employee whose first 60 days of employment were an introductory period during which he accrued no benefits. (Handbook Excerpt; R.E. 16-4, PageID.271; Receipt & Acknowledgment of Employee Handbook, R.E. 16-5, PageID.273). Plaintiff acknowledged he was an introductory employee who accrued no benefits during the introductory period. (New Hire Orientation Checklist, R.E. 16-6, PageID.275).

### 2. Plaintiff works just one week, half of which while experiencing stomach issues.

Plaintiff's first day of work was September 20, 2021. (Plaintiff's dep, p. 39, R.E. 16-3, PageID.154). Plaintiff performed the job duties during his first three days, Monday through Wednesday, without issue. (*Id.*, p. 45, R.E. 16-3, PageID.160). He testified he became sick on Thursday, his fourth day of work, and that he "walked into [Mr. Shelton's] office and told him [he] wasn't feeling well, before lunch." (*Id.*, p. 44, R.E. 16-3, PageID.159). Plaintiff testified he "did not feel well for the rest of the time [he] was there," which he described as

"stomach issues." *Id.*  Plaintiff testified that Mr. Shelton asked what Plaintiff ate, and Plaintiff said "nothing" because he was afraid to eat. *Id.*  Plaintiff did not say anything else and instead left the office. *Id.*  Plaintiff did not ask Mr. Shelton if he could leave work. *Id.*  Nor did he tell Mr. Shelton that he might need to leave work. *Id.*  In fact, Plaintiff did not ask Mr. Shelton for anything that day.  (*Id.*, p. 46, R.E. 16-3, PageID.161).  Plaintiff continued to work on Thursday and testified that he was "in and out of the bathroom the rest of the day" due to "diarrhea, stomach cramps." (*Id.*, pp. 44-45, R.E. 16-3, PageID.159-160).

When Plaintiff finished for the day on Thursday, he did not have any further discussion with Mr. Shelton. (Plaintiff's dep, p. 47, R.E. 16-3, PageID.162).  *Id.*  He did not have any discussions about his stomach issues with any other employees of Defendant on that Thursday.  (*Id.*, p. 48, R.E. 16-3, PageID.163).  Plaintiff had stomach issues the next day, Friday, which was his fifth day of employment. (*Id.*, p. 45, R.E. 16-3, PageID.160). According to Plaintiff, he was in and out of the bathroom on Friday at Defendant's facility and at his stops.  (*Id.*, p. 47, R.E. 16-3, PageID.162).  Plaintiff did not have any discussion with Mr. Shelton about how he felt on Friday.  (*Id.*, p. 48, R.E. 16-3, PageID.163).

Plaintiff did, however, speak with Mr. Shelton near the end of the day on Friday, and Mr. Shelton informed him that he had to work every Saturday (including the following day), he was immediately displeased. Plaintiff recounted the conversation and made it clear that he would not have accepted the job if he had known that working every Saturday was required:

> A.   Well, what he told me, what I can remember, is that you know you have to work every Saturday.  I said no, that's not what you said.  You asked me how do I feel about working on Saturdays, and I told him I don't mind working a Saturday now and then.  He goes, that's not what I told you; I said, that's not what you said.
>
> Q.   Okay.  So there was a disagreement about what was discussed during the interview and whether you would be required to work every Saturday?
>
> A.   Correct.
>
> Q.   Okay.
>
> A.   Then he said, when I told other applicants or drivers that you have to work every Saturday, they got up and left.
>
> Q.   What did he say –
>
> **A.   And my response was, I would have done the exact same thing.**
>
> Q.   Okay.
>
> **A.   I took the job for one of the main reasons because it was not every Saturday.  But I still worked that Saturday sick.**

(*Id.*, p. 49, R.E. 16-3, PageID.164) (emphasis added).

Plaintiff confirmed that he would have left the interview if Mr. Shelton had told him that the job required Plaintiff to work every Saturday. (*Id.*, p. 50, R.E. 16-3, PageID.165).

Plaintiff came to work on the next day, Saturday, which was his sixth day of work. (*Id.*, p. 48, R.E. 16-3, PageID.163). Plaintiff testified he was in and out of the bathroom all morning, and he worked from 7:00 a.m. until noon. *Id.* Plaintiff did not talk to Mr. Shelton about his stomach issues. (*Id.*, p. 51, R.E. 16-3, PageID.166). Plaintiff testified he was able to make his deliveries, load the truck, and do his job, despite the stomach issues, but that "[i]t was rough." (*Id.*, pp. 52-53, R.E. 16-3, PageID.167-168). There were no late or missed deliveries. *Id.*

### 3. Plaintiff stops coming to work for the next two weeks.

Plaintiff did not work on Monday, September 27, 2021, the first work day after his mandatory Saturday shift. (Plaintiff's dep, p. 54, R.E. 16-3, PageID.169). Plaintiff testified he had an accident with diarrhea on his drive to work, so he called in and left a voicemail on the main phone line that he was not coming in that day. (*Id.*, pp. 54-55, R.E. 16-3, PageID.169-170). Plaintiff did not work that Tuesday either, and, thus, took two days off of work after working only six. (*Id.*, p. 55). He did not work Wednesday either, and it was not until that Wednesday that Plaintiff finally visited a doctor, who gave him

some antibiotics. *Id.*  Plaintiff testified his doctor did not know what Plaintiff was dealing with but thought Plaintiff had some kind of stomach bug or stomach virus. *Id.*  Plaintiff testified that the antibiotics he received did work, eventually. (*Id.*, p. 60, R.E. 16-3, PageID.175).

Plaintiff never was explicit about his stomach issues. (Plaintiff's dep, p. 58, R.E. 16-3, PageID.173).  Instead, he believed he said that he was not coming into work because his stomach "is upset" or he did "not feel good." *Id.* Plaintiff sent Defendant an email of the picture of a doctor's note he was given on Wednesday, September 29. (*Id.*, p. 57, R.E. 16-3, PageID.172).  The doctor's note contained no details about Plaintiff's reason for not being at work. (Doctor's Note 9-29-21, R.E. 16-7, PageID.277).  The note said only that Plaintiff was seen on September 29, 2021, that he may return to work on October 6, 2021, and that he would be out of work from September 27, 2021 to October 5, 2021. (R.E. 16-7, PageID.277).

On the morning of October 4, 2021, Plaintiff sent an email to Ms. Kane stating: "I have a Dr. Appt. today at 2:30.  I will inform you of my visit when I get out." (Emails 10-4-21, R.E. 16-8, PageID.278-282).  Plaintiff did not provide any details about the reason for his doctor appointment or any medical information whatsoever. *Id.*

9

According to Plaintiff, he went back to his doctor on October 4, 2021, because he was not feeling better.  (Plaintiff's dep, p. 71, R.E. 16-3, PageID.186).  Plaintiff's doctor told him to keep taking antibiotics, that he had some kind of stomach issue and would start feeling better once the antibiotics started to work. *Id.*  Plaintiff received a second doctor's note on October 4, 2021, indicating that Plaintiff could not return to work until October 11, 2021. (*Id.*, p. 72, R.E. 16-3, PageID.187; Doctor's Note 10-4-21, R.E. 16-9, PageID.284).  The second doctor's note, like the first, contained no detail about Plaintiff's reason for not being at work. *Id.*  Instead, the note said Plaintiff was seen on October 4, 2021, that he may return to work on October 11, 2021, and that he would be out of work from September 27, 2021 to October 10, 2021. *Id.*  Plaintiff emailed pictures of the note to Defendant's Human Resources Manager, Ciara Cane, on the evening of October 4, 2021. (R.E. 16-8, PageID.278).  Plaintiff did not provide any information about his alleged medical condition beyond what was written in the note. *Id.*

After receiving the second note, Ciara Kane inquired about whether Plaintiff was able to come in and work a limited schedule to complete Defendant's mandatory deliveries.  (Ciara Kane Deposition, pp. 29-30, R.E. 16-10, PageID.314-315).  Prior to that conversation and after Plaintiff's unexpected departure, Defendant had been required to utilize expeditors and

10

other services to make the mandatory deliveries that Plaintiff would have

made had he been at work, which was very costly. (*Id.*, p. 30). Plaintiff

rejected the proposal to work a limited schedule and remarked that he would

not work "unless there's a toilet in the truck." *Id.*

### 4. Defendant tries to communicate with Plaintiff about the performance of his essential job functions.

On October 5, 2021, Ms. Kane responded to Plaintiff's email and

acknowledged receipt of the second doctor's note. (Emails 10-5-21, R.E. 16-11,

PageID.358). She noted:

> Thank you for providing the attached note, it has been received.
> We do need the company truck keys and gas card back ASAP. We
> can not hold off on the positions [sic] job duties until 10/10/2021.
> When are you able to drop those off?

*Id.* Plaintiff's only response was: "I'm assuming I'm fired?" (*Id.*). Plaintiff did

not engage in any discussions about his alleged medical condition or an

accommodation that would enable him to perform his job.

Ms. Kane responded the Company was working on how to move

forward:

> We are working to determine how to move forward now. A final
> decision has not been made regarding your employment status.
> We are requesting the company property in order to continue
> business operations while we come to a decision.

(Emails 10-5-21, R.E. 16-11, PageID.357).  Plaintiff responded about the company property, but did not give any additional information about his alleged medical condition:

> The keys are in the grey desk with the scale.  The gas card is in the truck.

(*Id.*)  Ms. Kane questioned why the keys and gas card were left where Plaintiff said, to which Plaintiff stated that's where Mr. Shelton told him to put them. (*Id.,* PageID.356).

### 5.  The Decision to Terminate Plaintiff's Employment

It was Mr. Shelton who asked Ms. Kane to inquire about the location of the truck keys and gas card—because he could not find the truck keys and needed them so the truck could be operated. (Deposition of Tom Shelton, p. 13, R.E. 16-12, PageID.372).  Mr. Shelton denied that he told Plaintiff to leave the keys in the desk and testified that he would not have the truck keys put out on the floor by an entrance where employees are coming in and out.  (*Id.*, p. 14, R.E. 16-12, PageID.373).  Rather, Defendant's drivers typically keep the keys with them. (*Id.*, p. 15, R.E. 16-12, PageID.374).

Thus, Plaintiff's indication that he left the truck keys and card at work before leaving, after which he never came back to work, was alarming, and it signaled to Defendant that Plaintiff had no intention of coming back, but

instead had abandoned his employment while trying to continue to receive a paycheck. (Kane dep, p. 43, R.E. 16-10, PageID.328).

On Friday, October 8, 2022, Plaintiff went to the facility to pick up his check. (Plaintiff's dep, pp. 84-85, R.E. 16-3, PageID.199-200). Plaintiff testified he told Ms. Kane he was "feeling pretty good now" and was going to come back to work on Monday, October 11, 2022, but Ms. Kane told him "we don't need you anymore." (*Id.*, pp. 89-90, R.E. 16-3, PageID.204-205). Plaintiff admitted Ms. Kane did not make any comments about Plaintiff's health condition. (*Id.*, p. 89, R.E. 16-3, PageID.204). Plaintiff did not challenge the termination and does not recall accusing Defendant of discrimination. (*Id.*, p. 90, R.E. 16-3, PageID.205).

## B.    Pertinent proceedings

Plaintiff filed suit in federal district court raising discrimination, failure to accommodate, and retaliation claims under the Americans with Disabilities Act ("ADA"). He also brought state law claims, but the district court declined to exercise supplemental jurisdiction over those claims and dismissed them without prejudice.

Discovery ensured, and in due course Defendant filed a motion for summary judgment. Defendant argued that Plaintiff's discrimination claim fails for four reasons: (1) he cannot prove he was disabled; (2) he cannot

prove he was a qualified individual; (3) he cannot prove that Defendant perceived him as being disabled; and (4) Defendant articulated a legitimate, nondiscriminatory reason for terminating him that he did not show to be a pretext. Defendant also argued that Plaintiff cannot establish a failure-to-accommodate claim. And Defendant argued that Plaintiff's retaliation claim fails for lack of a valid underlying basis.

Plaintiff filed a response to Defendant's motion that largely mirrors the text of Plaintiff's brief on appeal. (R.E. 19). Defendant filed a reply, which rebutted the arguments set forth by Plaintiff. (R.E. 21).

On February 5, 2024, the district court issued its opinion and order granting Defendant's motion, finding it unnecessary to hear oral argument. (R.E. 22). The district court concluded that Plaintiff's discrimination claim fails because Plaintiff did not demonstrate that he is disabled. (R.E. 22, PageID.727-728). The court also found that Plaintiff did not demonstrate that he was regarded by Defendant as disabled. (*Id.*, PageID.729). The court found it unnecessary to address the other grounds on which Defendant argued that it was entitled to summary judgment on the discrimination claim.

The court also granted summary judgment on the failure-to-accommodate claim and on the retaliation claim. (*Id.*, PageID.731-733).

Thereafter, Plaintiff filed his notice of appeal to this Court.

## SUMMARY OF ARGUMENT

The district court properly granted summary judgment for several reasons and found it unnecessary to address other grounds on which Plaintiff's claims fail as a matter of law.  As the district court correctly recognized, Plaintiff's disability discrimination claim fails because he did not demonstrate he was disabled.  Nor can Plaintiff demonstrate that he was regarded as disabled, since the relevant statutory definition specifically states that a transitory condition of the type Plaintiff experienced with his stomach issues does not give rise to a regarded-as-disabled claim.

Plaintiff's discrimination claim also fails for another reason the district court found it unnecessary to reach: he was not a qualified individual because he was unable to perform the job during the time of his alleged disability.  And the claim fails for the additional reason, also unaddressed by the district court, that Defendant proffered a legitimate basis for terminating Plaintiff that he did not demonstrate was a pretext for illegal discrimination.

The district court also correctly granted summary judgment on the failure-to-accommodate claim, since Plaintiff proffered no evidence whatsoever that there was a failure to accommodate.  Quite to the contrary,

Defendant offered an accommodation that Plaintiff refused, choosing instead to refuse to come to work.

Finally, Plaintiff's retaliation claim fails because there was no activity or basis on which the retaliation claim could be premised, as the district court correctly recognized.

## ARGUMENT I

### PLAINTIFF FAILED TO DEMONSTRATE A PRIMA FACIE DISABILITY DISCRIMINATION CLAIM BECAUSE HE NEITHER HAD A DISABILITY NOR WAS A QUALIFIED INDIVIDUAL.

It is undisputed that Plaintiff has no direct evidence of disability discrimination by Defendant.  Consequently, to prove such a claim Plaintiff must proceed under the *McDonnell-Douglas* burden-shifting framework. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).  See *Babb v. Maryville Anesthesiologists PC*, 942 F.3d 308, 319-20 (6th Cir. 2019); *AC ex rel JC v. Shelby County of Educ.*, 711 F.3d 687, 695 (6th Cir. 2013).

The *McDonnell-Douglas* framework is a three-step analysis:  first, the plaintiff must set forth a prima facie case of discrimination.  Second, the burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell-Douglas*, 411 U.S. at 802. Third, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the defendant were a pretext for discrimination.  The ultimate burden of persuasion remains at all times with the plaintiff.  *Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

To establish a prima facie case of disability discrimination, "a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee,* 639 F.3d 253, 258-59 (6th Cir. 2011) (internal quotation marks omitted).  "Furthermore, the disability must be a 'but for' cause of the adverse employment action." *Tennial v. United Parcel Serv., Inc.,* 840 F.3d 292, 306 (6th Cir. 2016) (citing *Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312, 318 (6th Cir. 2012) (en banc).

## A.    Plaintiff failed to demonstrate he was disabled.

The starting point for assessing Plaintiff's discrimination claim is 42 U.S.C. § 12112(a), which sets forth the general rule as follows:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

Plaintiff's claim never even gets off the ground because he was unable to demonstrate that he possessed a "disability."  The term "disability" is defined as:

**(A)** A physical or mental impairment that substantially limits one or more major life activities of such individual;

**(B)** The record of such an impairment; or

**(C)** Being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102(1).  Paragraph (3) describes the phrase "regarded as having such an impairment" as used in paragraph (1) by stating, in pertinent part, that "[p]aragraph (1)(C) shall not apply to impairment that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of six months or less."  42 U.S.C. § 12102(3).

Plaintiff cannot establish that he was "regarded as having" a physical or mental impairment that substantially limits one or more major life activities because of the explicit description in paragraph (3) that that threshold is not met where the impairment is one that is transitory and minor.  It is undisputed that that description fits Plaintiff's stomach issues, which lasted less than six months.  As this Court has recognized, there is "no question that… impairments are transitory" when a restriction is in effect for a month of two. *White v. Interstate Distributor Co.*, 438 Fed. Appx. 415, 420 (6th Cir. 2011).

But Plaintiff also was unable to establish that his stomach issues constituted a physical or mental impairment that substantially limited one or more major life activities.  Plaintiff's brief does not even attempt to identify

19

any "one or more major life activities" that were substantially limited by his stomach condition.

Instead, Plaintiff's argument that he was disabled begins bizarrely by attempting to distinguish *Hrdlicka v. General Motors, LLC*, 63 F.4th 555 (6th Cir. 2023). (Plaintiff's brief, pp 16-17). The issue in *Hrdlicka* was whether the employer was notified of a plaintiff's alleged disability. This Court held that the employer was not notified of a disability by virtue of Plaintiff's text messages referencing generalized ailments, such as "head… really hurting" having a "fever and other symptoms," or simply being "sick." *Hrdlicka*, 63 F.4th at 567. Plaintiff's attempt to distinguish *Hrdlicka* fails on its face given the striking similarity between the plaintiff's condition in that case and Plaintiff's condition in this one. Regardless, Plaintiff's attempt to distinguish *Hrdlicka* sheds no light on whether Plaintiff's stomach issues rose to the level of a disability, i.e., whether they "substantially limit[ed] one or more major life activities… ."

Plaintiff next tries to distinguish another case Defendant cited in its motion for summary judgment, *Milholland v. Sumner County Board of Education*, 569 F.3d 562 (6th Cir. 2009). (Plaintiff's brief, pp 17-19). But *Milholland* did not deal with the issue of whether the plaintiff was disabled under the definition in subsection (1)(A), i.e., whether the plaintiff's condition

"substantially limits one or more major life activities."  It dealt only with the definition in (1)(C), that of being regarded as having such an impairment.  As set forth above, Plaintiff cannot possibly meet that definition because subsection (3)(B) specifically states that that definition is not met by impairments that are transitory and minor.  Furthermore, Plaintiff's attempt to distinguish *Milholland* fails on its face.  *Milholland* recognized that, even to meet the "regarded as" definition, the plaintiff must show something more than that the employer had knowledge of certain symptoms or health problems.  That is precisely the case here; Plaintiff never conveyed information to Defendant—and has not even argued in this case, much less in his appellate brief—that the stomach issues he experienced constituted an impairment that substantially limited one or more major life activities.

Plaintiff's argument that he was disabled concludes with a single paragraph likening this case to *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022).  (Plaintiff's brief, p 19).  Plaintiff points out that in that case the plaintiff was fired while on a "second note" from a doctor, "similar to Plaintiff here." (*Id*.).  But *Shields* sheds no light on whether a condition of the type Plaintiff experienced in this case, stomach issues, meets the requirement of disability, i.e., that it substantially limited one or more major life activities.

In fact, whether a condition substantially limited one or more major life activities was not even the issue in *Shields*.[1]  The district court in our case correctly recognized that Plaintiff's attempt to analogize this case to *Shields* gets him nowhere.  The district court noted that the court in *Shields* held that a temporary impairment can satisfy the first definition of disability, known as "actual disability."  (R.E. 22, PageID.728).  The district court then said this:

> But that holding did not alter the requirement that such an impairment substantially limit one or more major life activities… "[M]ajor life activities include, but are not limited to, carrying for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  § 12102(2)(A).  "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  § 12102(2)(B).  Here, plaintiff does not identify how any physical impairments he had impacted one or more of his major life activities.

*Id*., PageID.728-729.

---

[1] *Shields* is not analogous to the instant case even if that were the issue.  The plaintiff in *Shields* had undergone surgery and was unable to perform essential functions for two months due to recovery from the post-surgical injuries. *Shields*, 32 F.4th at 1220.  In fact, the plaintiff in *Shields* was unable to "fully us[e] her right arm, shoulder, and hand to lift, pull, push, type, write, tie her shoes, or use a hairdryer."  These quite clearly constitute major life activities under the very definition in the statute.  Her condition also substantially limited her in "sleeping, lifting, writing, pushing, pulling [and] manual tasks." *Id*. at 1220.

The district court got it exactly right in explaining why Plaintiff's heavy reliance on *Shields* gets him nowhere.  And the district court correctly recognized that Plaintiff proffered no evidence that his stomach issues substantially limited one or more major life activities.  At best from Plaintiff's perspective, the stomach issues required him to make frequent use of a bathroom or to otherwise deal with recurring diarrhea.  Plaintiff cites no authority from any jurisdiction for the proposition that such things rise to the level of substantially limiting one or more major life activity.  And he makes no argument whatsoever in his brief to that end.

As Defendant pointed out in its reply brief in support of summary judgment, such ailments as the flu and the common cold are not regarded as a disability within the meaning of the ADA.  *Kieffer v. CPR Restoration & Cleaning Servs, LLC*, 200 F. Supp. 3d 520, 537 (ED Pa 2016), *aff'd sub nom. Kieffer v. CPR Restoration & Cleaning Servs, LLC*, 733 F. App'x 632 (3rd Cir. 2018).  Plaintiff makes no attempt to distinguish *Kieffer*.

In fact, Plaintiff admitted he has never been disabled.  He testified as follows:

Q.     You're not a disabled individual, correct?

MS. BROWNLEE:· Objection, form.· But you can answer, Mr. Cook.

**THE WITNESS:· No, I'm not -- no.**

BY MR. GILLIAM:

Q.    Okay.· And you've never held yourself out to be disabled,
       right?

       MS. BROWNLEE:· Objection, form.· But you can answer, Mr.
       Cook.

       **THE WITNESS:· No.**

(R.E. 16-3, PageID.208).

Plaintiff's failure even to attempt on appeal to demonstrate that his

condition substantially limited one or more major life activities is consistent

with his candid acknowledgment that he has never been disabled.  And it

forecloses the relief he seeks from this Court.  This Court should, therefore,

affirm.

**B.    Plaintiff was not a qualified individual.**

A second, independent basis for affirmance is that Plaintiff also failed to

demonstrate that he was a "qualified individual" as defined in the ADA.  That

term is defined in the statute as follows:

> The term "qualified individual" means an individual who, with or
> without reasonable accommodation, can perform the essential
> functions of the employment position that such individual holds
> or desires.  For the purposes of this subchapter, consideration
> shall be given to the employer's judgment as to what functions of a
> job are essential, and if an employer has prepared a written
> description before advertising or interviewing applicants for the

job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

Plaintiff failed to meet this definition during the relevant time period by his own reckoning. In fact, Plaintiff's position is precisely that he was unable to perform the job as delivery driver because his condition required him to use the bathroom so frequently—a condition that prevented him from being able to make deliveries. Regular attendance and making daily deliveries were essential functions of Plaintiff's position as a local delivery driver, as Plaintiff himself acknowledged. (See Plaintiff's dep, R.E. 16-3, PageID.158). As Plaintiff testified:

> Q.     ... like your prior positions, you understood that, you know, attending work was an essential aspect of performing your job, right?
>
> A.     Yes.
>
> Q.     And this was not a job you could do remotely, correct?
>
> A.     Correct.

(*Id*.).

On appeal, Plaintiff argues that he was qualified to perform the job because making deliveries "was not the only essential or required part of the job." (Plaintiff's brief, p 20). Plaintiff points out that the job required other

25

activities too, such as "inspecting parts, keeping the bay clean, weighing parts, pallet maintenance, and other such responsibilities 'inside the plant' that were essential to Mr. Cook's position." *Id*. But the mere fact that Plaintiff could perform some aspects of the job does not suffice. He was required to perform *all essential* parts of the job, one of which was to make deliveries. The definition of "qualified individual" is not met by an individual that can do some essential functions of the job; it requires the individual to "perform *the* essential function*s*" of the job. 42 U.S.C. § 12111(8) (emphasis added).

In *EEOC v. Ford Motor Co*., 782 F.3d 753 (6th Cir. 2015), this Court recognized that to be "qualified" under the ADA, a person must be able to "perform the essential functions of" a job "with or without reasonable accommodation." The Court recognized that a "reasonable accommodation" may include "job restructuring [and] part-time or modified work schedules." *Id*. at 761 (citation omitted). The Court continued, "but it does *not* include removing an 'essential function[]' from the position, for that is *per se* unreasonable." *Id*. at 761 (emphasis in original).

The plaintiff in *EEOC v. Ford* was not qualified because of excessive absences that prevented her from performing the essential functions of a resale buyer. *Id.* In fact, the reason for the absences in that case are remarkably similar to those in this case: the plaintiff had "irritable bowel

26

syndrome" that "gave her uncontrollable diarrhea and fecal incontinence, sometimes so bad that 'it' could 'start pouring out of [her]' at work. ... She occasionally couldn't even make the one-hour drive to work without having an accident." *Id*. at 758-759 (cleaned up).  Plaintiff in the instant case is not a qualified individual for the same reason that the plaintiff in *EEOC v. Ford* was not qualified:  he was unable to come to work and perform the essential functions of the job due to stomach issues that required too frequent bathroom usage.  *See also Ríos–Jiménez v. Principi,* 520 F.3d 31, 42 (1st Cir. 2008) (holding that employee who frequently missed work was not a qualified individual able to perform the essential functions of her job, either with or without a reasonable accommodation, as required to support disability discrimination and reasonable accommodation claims).

The instant case, thus, presents the unique situation of a plaintiff who was neither disabled nor qualified, meaning he experienced a condition that did not substantially limit one or more major life activity but that also prevented him from performing the essential functions of the job.  "The ADA is broad in its scope, but it only protects individuals who can perform their job." *Browning v. Liberty Mut. Ins. Co*., 178 F.3d 1043, 1048 (8th Cir. 1999).  While the district court found it unnecessary to address the issue of whether Plaintiff was a qualified individual, because Plaintiff was not, this constitutes another

basis for affirmance.  Plaintiff's failure to demonstrate otherwise in his brief on appeal confirms as much.

Plaintiff's brief even touts his inability to perform the job—as if that were to his benefit.  But the whole point of the ADA is to prohibit discrimination against employees who *are able to perform their jobs* but suffer from some disability that does not prevent them from doing so.  Plaintiff's condition presents the exact opposite scenario:  he was not disabled, but he was unable to perform the job.

Plaintiff's attempt to turn the ADA on its head was properly rejected by the district court based on the first half of the problem—his inability to show that he was disabled.  Because he also was unable to perform the essential functions of the job, this Court can affirm on that additional, alternative basis.

## ARGUMENT II

### PLAINTIFF FAILED TO DEMONSTRATE THAT DEFENDANT'S REASON FOR TERMINATING HIM WAS PRETEXTUAL FOR DISABILITY DISCRIMINATION.

Plaintiff's claim fails, and summary judgment was properly granted, for the additional reason that Defendant fired him for a legitimate, nondiscriminatory reason that Plaintiff did not demonstrate to be a pretext. Specifically, Defendant fired Plaintiff because he was not performing the job and gave no indication that he planned to continue to do so. Plaintiff's inability to perform the functions of the job is discussed above and is undisputed. Indeed, as noted, his argument is oddly predicated on the fact that he could not perform the job duties based on his stomach issues. And any suggestion that the temporary nature of Plaintiff's condition weighs in Plaintiff's favor in this regard should be resoundingly rejected. Plaintiff worked a total of six days before being unable to work for two entire weeks. Those undisputed facts make this case very much unlike all the cases discussed above, namely *Hrdlicka, Milholland, Shields,* and *EEOC v. Ford*, all of which involved longtime employees who only experienced interim departures from work after years of doing the job.

Furthermore, as Defendant's representatives testified, Plaintiff was only terminated after he took actions indicating he no longer was interested in coming to work.  He left the keys and the fuel card where he was not supposed to leave them, thus suggesting that he was turning them in.  Notably, these actions, and the action of taking two weeks off, happened only after Plaintiff was advised that he would have to work every Saturday.  And as Plaintiff admitted in his deposition, had he known he would be required to work every Saturday he would not have taken the job to begin with.  Defendant, therefore, reasonably believed that Plaintiff was not interested in the job based on that issue and on his actions of turning in the keys and the fuel card.

Defendant's termination on this basis was for a legitimate, nondiscriminatory reason.  And Plaintiff came nowhere close to demonstrating that this reason was a pretext for illegal discrimination based on his supposed disability.  Consequently, this is yet another alternative basis on which this Court can affirm.

## ARGUMENT III

### PLAINTIFF FAILED TO ESTABLISH A FAILURE-TO-ACCOMMODATE CLAIM

In addition to his claim that he was wrongfully terminated in violation of the ADA, Plaintiff's Complaint also claims that he was "denied accommodations". (Complaint, ¶25, R.E. 16-2, PageID.109). This claim is fatally flawed based on Plaintiff's own admissions.

To show a failure to accommodate under the ADA, Plaintiff must show that: 1) he is disabled within the meaning of the Act; 2) he is otherwise qualified for the position, with or without reasonable accommodation; 3) Defendant had reason to know of his disability; 4) he requested an accommodation; and 5) Defendant failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x. 974, 982-83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer," in which case it is no longer a reasonable accommodation and the employer is not compelled to offer it. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018).

The alleged failure-to-accommodate claim fails for two reasons.  First, Plaintiff never requested an accommodation, which he even admitted:

> Q.    Okay.  And you never asked anyone at Warren Screw Products to provide you any sort of accommodation so that you could come in and work, correct?
>
> A.    Correct.

(Plaintiff's dep, p. 116, R.E. 16-3, PageID.232).  Plaintiff did nothing more than send doctor's notes with no information about the alleged impairment at issue or any limitations caused thereby.  (R.E. 16-7; R.E. 16-9).  Plaintiff argues in his brief that the submission of doctor's notes "operated as a request for accommodation," (Plaintiff's brief, p. 25), but Plaintiff himself testified to the contrary—that he never asked anyone at Defendant for an accommodation.

Second, Defendant did offer Plaintiff an accommodation despite his not even asking for one, and Plaintiff rejected it.  Ms. Kane testified, "[W]e requested that he, if he had the ability to come in and just work a couple of hours to get a couple of our mandatory runs done, because at that time, him not being there, we had to call in expeditors and other services in order to make our deliveries, which was very costly."  (Kane dep, p. 30, R.E. 16-10, PageID. 315).  Ms. Kane continued, "So, we asked him if he had the ability to come in and just do a couple of runs.  At that point, he made kind of a smart

comment, basically said no, not unless there's a toilet in the truck, and was not willing to continue the conversation any further." (*Id.*).

Also, while this Court has held that a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances, *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998), Plaintiff cites no authority to support the proposition that such circumstances include a new employee who works just one week then fails to show up for two.

Ultimately, both because Plaintiff did not request an accommodation and because he rejected the reasonable accommodation Defendant offered him, summary judgment was properly granted on Plaintiff's failure-to-accommodate claim.

**ARGUMENT IV**

**PLAINTIFF FAILED TO ESTABLISH RETALIATION**

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that 1) he engaged in activity protected by the ADA; 2) the defendant knew of this exercise of protected rights; 3) the defendant subsequently took an employment action adverse to plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and 4) there was a causal connection between the protected activity and the adverse employment action. *Hurtt v. Int'l Servs., Inc.*, 627 Fed.Appx. 414, 422 (6th Cir. 2015)(citation omitted). "The required causal connection is a 'but for' relationship." *Lewis, supra* 681 F.3d at 318.

Plaintiff cannot show any protected activity or knowledge of such activity. Plaintiff admitted that he did not request a reasonable accommodation that would enable him to perform the essential functions of his position. (Plaintiff's dep, p. 116, R.E. 16-3, PageID.231). Nor did Plaintiff complain of discrimination. (*Id.*, p. 90, R.E. 16-3, PageID.205). The applicable legal analysis ends there. Without protected activity, there can be no retaliation. *Hurtt, supra*, at 422.

Moreover, as outlined above, Defendant had legitimate, non-discriminatory reasons for termination Plaintiff's employment, which Plaintiff

cannot demonstrate to be pretextual.  Plaintiff's retaliation claim thus fails in

myriad ways, and summary judgment was properly granted on it.

## RELIEF

For the reasons set forth herein, Defendant requests that this Court

affirm the judgment of the district court.  Defendant further requests any and

all other relief to which it is entitled.

Respectfully submitted,

By    /s/Jeffrey C. Gerish
Jeffrey C. Gerish
Plunkett Cooney
Attorney for Defendant-Appellee
Warren Screw Products, Inc.
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com

Dated: September 4, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

STATE OF MICHIGAN          )
                                              ) ss.
COUNTY OF OAKLAND        )

Jeffrey C. Gerish, being first duly sworn, certifies and states the following:

1.      He is an attorney with the firm Plunkett Cooney, and is in principal charge of the above-captioned cause for the purpose of preparing the attached brief on appeal;

2.      The joint brief on appeal prepared by his office complies with the type-volume limitation, using Cambria size 14 font; and

3.      The word processing system counts the number of words in the joint brief as 6,819.

<u>/s/Jeffrey C. Gerish</u>
Jeffrey C. Gerish

## **CERTIFICATE OF SERVICE**

Jeffrey C. Gerish, being first duly sworn, deposes and says that he is a Shareholder with the Firm of Plunkett Cooney and that on September 4, 2024, he caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the Sixth Circuit Court of Appeals and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid and depositing said envelope and its contents in a receptacle for the U.S. Mail.

/s/Jeffrey C. Gerish
Jeffrey C. Gerish
Attorney for Defendants-Appellees
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304
jgerish@plunkettcooney.com

# ADDENDUM – DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY | DESCRIPTION | PageID # |
|---|---|---|
| 16 | Defendant's Motion for Summary Judgment | 67-435 |
| 16-2 | Exhibit 1 - Complaint | 104-114 |
| 16-3 | Exhibit 2 - Plaintiff's Deposition | 115-269 |
| 16-4 | Exhibit 3 - Handbook Excerpt | 270-271 |
| 16-5 | Exhibit 4 - Receipt & Acknowledgment of Employee Handbook | 272-273 |
| 16-6 | Exhibit 5 - New Hire Orientation Checklist | 274-275 |
| 16-7 | Exhibit 6 - Doctor's Note 9-29-21 | 276-277 |
| 16-8 | Exhibit 7 - Emails 10-4-21 | 278-282 |
| 16-9 | Exhibit 8 - Doctor's Note 10-4-21 | 283-284 |
| 16-10 | Exhibit 9 - Ciara Kane Deposition | 285-354 |
| 16-11 | Exhibit 10 - Emails 10-5-21 | 355-358 |
| 16-12 | Exhibit 11 - Deposition of Tom Shelton | 359-430 |
| 19 | Plaintiff's Response to Defendant's Motion for Summary Judgment | 440-709 |
| 21 | Defendant's Reply in Support of Motion for Summary Judgment | 712-722 |
| 22 | Opinion and Order, 2-05-24 | 723-734 |

Open.00590.22878.35080574-1